**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SHAWN MCLOUGHLIN, ROBERT MILLER, ANGELO SOFOCLEUS, ANDREW LEWIS, CHEYNE BUNNETT, TOM ROBERTSHAW, and OLIVIA SCOTT (as the personal representative of the ESTATE OF RUSSELL SCOTT), <br><br> Plaintiffs, <br><br> v. <br><br> CANTOR FITZGERALD, L.P., BGC HOLDINGS, L.P., and NEWMARK HOLDINGS, L.P. <br><br> Defendants. | C.A. No. 23-cv-256-RGA |

**DEFENDANTS' OPENING BRIEF**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

SIDLEY AUSTIN LLP
Benjamin R. Nagin
Eric G. Hoffman
787 Seventh Avenue
New York, NY 10019
(212) 839 5911
bnagin@sidley.com

Tacy F. Flint
Frank J. Favia, Jr.
One South Dearborn
Chicago, IL 60603
(312) 853 7875
tflint@sidley.com

Dated: April 28, 2023

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
C. Barr Flinn (No. 4092)
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com
agaza@ycst.com
rvrana@ycst.com

CANTOR FITZGERALD
David A. Paul
Mitchell Nobel
110 E. 59th Street, 7th Floor
New York, New York 10022
(212) 610-2298
dpaul@cantor.com
mitchell.nobel@cantor.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.  THE COMPLAINT FAILS TO STATE A BREACH OF CONTRACT CLAIM ................. 5

  A.  Plaintiffs' Allegations of "Wrongful" Non-Payment Are Insufficient ............................ 6

  B.  Plaintiffs Fail to Plead Their Own Performance ............................................................... 7

II.  PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER THE SHERMAN ACT ..................... 8

  A.  Plaintiffs Have Not Pleaded Antitrust Injury ................................................................... 8

  B.  Plaintiffs Do Not Allege a Cognizable Conspiracy ........................................................ 11

  C.  Plaintiffs Fail to Allege That Their Restrictive Covenants Unreasonably Restrain Trade ... 12

    1.  Plaintiffs' Restrictive Covenants Are Properly Analyzed Under the Rule of Reason .. 12

    2.  Plaintiffs Fail to Allege a Violation of the Rule of Reason ........................................... 14

  D.  Plaintiffs' Sherman Act Claims Are Untimely ............................................................... 17

III.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BGC OR NEWMARK .... 17

  A.  Plaintiffs McLoughlin's and Miller's Claims Are Time-Barred and Released ............... 17

  B.  The Other Plaintiffs Do Not State Any Claim Against BGC or Newmark ...................... 19

  C.  Plaintiff Sofocleous Also Released His Claims .............................................................. 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.D.M. Corp. v. Sigma Instruments, Inc.*,
  628 F.2d 753 (1st Cir. 1980) ............................................................... 10

*Am. Needle, Inc. v. Nat'l Football League*,
  560 U.S. 183 (2010) ............................................................................ 11

*Anand v. Indep. Blue Cross*,
  2021 WL 3128690 (E.D. Pa. July 23, 2021), *aff'd in relevant part*, 2022 WL
  2339476 (3d Cir. 2022) ....................................................................... 16

*Aya Healthcare Servs. v. AMN Healthcare, Inc.*,
  2018 WL 3032552 (C.D. Cal. June 19, 2018) ..................................... 13

*Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*,
  946 F. Supp. 495 (E.D. Ky. 1996) ...................................................... 12

*Brokerage Concepts v. United States Healthcare*,
  140 F.3d 494 (3d Cir. 1998) ............................................................... 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ...................................................................... 8, 9, 10

*Buck v. Hampton Tp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ................................................................. 3

*Cable Line, Inc. v. Comcast Cable Communs. of Pa., Inc.*,
  2017 WL 4685359 (M.D. Pa. Oct. 18, 2017), *aff'd*, 767 F. App'x 348 (3d Cir.
  2019) .................................................................................................... 16

*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*,
  247 F. App'x 403 (3d Cir. 2007) ........................................................... 7

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984) ....................................................................... 11, 13

*In re Cotton Yarn Antitrust Litig.*,
  505 F.3d 274 (4th Cir. 2007) ............................................................ 9, 19

*Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*,
  833 F.3d 399 (3d Cir. 2016) ............................................................... 16

*Eichorn v. AT&T Corp.*,
  248 F.3d 131 (3d Cir. 2001) ......................................................... *passim*

*Eni Holdings, LLC v. KBR Grp. Holdings, LLC*,
  2013 WL 6186326 (Del. Ch. Nov. 27, 2013) ........................................................18

*FinancialApps, LLC v. Envestnet, Inc.*,
  2020 WL 4569466 (D. Del. July 30, 2020), *report and recommendation
  adopted in relevant part*, 2020 WL 5552456 (D. Del. Sept. 15, 2020) ...................6

*In re G-I Holdings, Inc.*,
  755 F.3d 195 (3d Cir. 2014).......................................................................................6

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
  32 F.4th 242 (3d Cir. 2022) .......................................................................................8

*Koenig v. Automatic Data Processing*,
  2003 U.S. Dist. LEXIS 26812 (D.N.J. 2003) ....................................................11, 14

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
  551 U.S. 877 (2007).................................................................................................13

*LifeWatch Servs. v. Highmark, Inc.*
  902 F.3d 323 (3d Cir. 2018).....................................................................................15

*Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*,
  624 F. App'x 23 (2d Cir. 2015) ...............................................................................13

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,
  411 F. Supp. 3d 316 (D. Del. 2019).........................................................................18

*McDonald v. Johnson & Johnson*,
  722 F.2d 1370 (8th Cir. 1983) .................................................................................10

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
  2017 WL 3433131 (S.D. Ohio Aug. 9, 2017), *aff'd*, 922 F.3d 713 (6th Cir.
  2019) .........................................................................................................................13

*Merchantwired, LLC v. Transaction Network Servs., Inc.*,
  2003 WL 21689647 (Del. Super. Ct. July 16, 2003) .................................................7

*Moretta v. Lexington Ins. Co.*,
  2016 WL 10570875 (D.N.J. Oct. 18, 2016)...............................................................7

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021)..............................................................................................12

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018).............................................................................13, 14, 15

iii

*Orson, Inc. v. Miramax Film Corp.*,
  79 F.3d 1358 (3d Cir. 1996)..............................................................................13

*PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*,
  19 F.4th 308 (3d Cir. 2021) ..............................................................................18

*Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*,
  886 F.3d 332 (3d Cir. 2018)................................................................................9

*Queen City Pizza v. Domino's Pizza*,
  124 F.3d 430 (3d Cir. 1997)..................................................................8, 14, 15

*Redfield v. Cont'l Cas. Corp.*,
  818 F.2d 596 (7th Cir. 1987) ..............................................................................7

*Siegel Transfer, Inc. v. Carrier Exp., Inc.*,
  54 F.3d 1125 (3d Cir. 1995)..............................................................................11

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997)...............................................................................................12

*Stewart v. Jersey City Mun. Utils. Auth.*,
  2005 WL 1606386 (D.N.J. July 5, 2005)...........................................................20

*Warren Gen. Hosp. v. Amgen Inc.*,
  643 F.3d 77 (3d Cir. 2011).................................................................................6

*Zenith Radio Corp. v. Hazeltine Rsch.*,
  401 U.S. 321 (1971)...........................................................................................17

## Statutes

Sherman Act Section 1, 15 U.S.C. § 1 ....................................................... *passim*

15 U.S.C. § 15b..................................................................................................17

## Other Authorities

Fed. R. Civ. P. 9(c) .............................................................................................7

Fed. R. Civ. P. 12(b)(6).......................................................................................18

Fed. R. Civ. P. 23 ................................................................................................6

## PRELIMINARY STATEMENT

Seven highly compensated former limited partners of one or more of the Defendant partnerships have brought this action seeking payments they believe are due under partnership and/or separation agreements. Normally, seven individuals would bring seven individual breach of contract claims. But Plaintiffs here instead seek to litigate on behalf of a purported nationwide class of individuals who entered different contracts with different Defendants over a 15-year period. Obscuring this overreach and the stark differences between members of the proposed class, Plaintiffs have pleaded their claims in a highly generic fashion. The result is a threadbare Complaint with conclusory allegations that fail to state a claim for breach of contract or antitrust violations. The Complaint should be dismissed.

The Complaint offers only the most conclusory allegations regarding any purported breach of contract. Plaintiffs provide no detail as to which Defendant breached which provision of which contract with respect to each Plaintiff. Nor do Plaintiffs allege their own satisfaction of the conditions to the additional compensation they seek under the agreements. These fundamental pleading deficiencies warrant dismissal of Plaintiffs' breach of contract claim.

The antitrust claim also fails on multiple grounds. Plaintiffs, all of whom seek contractual payments for the redemption of partnership units, do not allege any antitrust injury derived from harm to competition, and they therefore lack antitrust standing. Additionally, while Plaintiffs allege "a scheme by those in control of the Defendant partnerships" (Compl. ¶ 11), Section 1 of the Sherman Act does not capture coordinated activity among the owners, officers or employees of the same firm. Plaintiffs also fail to properly define a relevant market or allege facts regarding any harm to competition in such a market. Finally, the antitrust claim is based on a purported "fifteen year-long scheme" (Compl. ¶ 1), and therefore is barred by the applicable statute of limitations. Each of these legal defects independently requires dismissal of the antitrust claim.

In addition to these deficiencies, the claims of Plaintiffs McLoughlin and Miller are time-barred, and Plaintiffs McLoughlin, Miller, and Sofocleus each released their claims against Defendants in written Separation Agreements. These releases bar their participation in this action. Because no Plaintiff other than McLoughlin and Miller alleges any relationship with Newmark or BGC, there are no claims stated against them and they should be dismissed.

## FACTUAL BACKGROUND AND NATURE AND STAGE OF THE PROCEEDINGS[1]

Plaintiffs Shawn McLoughlin and Robert Miller are former limited partners of Defendants BGC Holdings, L.P. ("BGC") and Newmark Holdings, L.P. ("Newmark"). (Compl. ¶¶ 13–14.) Plaintiffs Angelo Sofocleus, Andrew Lewis, Cheyne Bunnett, Tom Robertshaw, and Russell Scott[2] are former limited partners of Defendant Cantor Fitzgerald, L.P. ("CFLP"). (*Id.* ¶¶ 15–19.) McLoughlin served as the CEO of BGC from September 2017 until he was terminated in May 2020, Miller served as Head of U.S. Credit Products at BGC from 2016 until he was terminated in December 2019, and Sofocleus served as CEO of Cantor Fitzgerald Europe from 2016 to 2020. (*Id.* ¶¶ 13–15.) Lewis served as Head of UK Market Making at Cantor Fitzgerald Europe, and Bunnett and Robertshaw served as Equity Market Makers in the UK at Cantor Fitzgerald. (*Id.* ¶¶ 16–18.)

Plaintiffs allege that, after they exited one or more of the Defendant partnerships, Defendants failed to pay them certain compensation they were allegedly owed. (*Id.* ¶ 10.) To become limited partners, Plaintiffs alleged they entered into one or more of the following agreements: the 2008 CFLP Partnership Agreement ("CFLP Partnership Agreement"), the 2017 BGC Partnership Agreement ("BGC Partnership Agreement"), and the 2017 Newmark

---

[1] For purposes of this motion, the factual background is based on the Complaint (D.I. 1 ("Compl.")) and the documents referenced therein.
[2] Russell Scott is deceased; Olivia Scott is the personal representative of his estate and as such is the applicable Plaintiff.

Partnership Agreement ("Newmark Partnership Agreement").[3] (*Id.* ¶ 3.) As relevant here, the Partnership Agreements provide that a terminated partner is entitled to certain installment payments over four years beginning one year after departing in connection with the redemption of their units. (*Id.* ¶ 43.) The partner, however, must satisfy a variety of conditions precedent in order to receive these payments. (*Id.* ¶¶ 43–45.) The conditions include refraining from soliciting employees or clients, and refraining from competing with the partnership or assisting others in doing so. (Compl. Ex. 1, at § 12.02(c); *id.* Ex. 2, at § 12.02(c); Vrana Decl. ¶ 2, Ex. A § 11.04(a), (c)). Moreover, the Partnership Agreements each establish a one-year limitations period (from the date of redemption of partnership units or notice thereof) for challenges to "the terms, conditions, or validity" of a redemption. (Compl., Ex. 1 at § 13.19(a); *id.* Ex. 2 at § 13.19(a) (same), Vrana Decl. ¶ 2, Ex. A at § 20.13.)

The Complaint notes that certain Plaintiffs executed Separation Agreements in connection with their departures. (Compl. ¶ 51.) Plaintiffs McLoughlin, Miller, and Sofocleus each signed a Separation Agreement. The Separation Agreements effectuated the redemption of partnership units in exchange for promised installment payments over the four years following separation, but conditioned these payments on compliance with specific requirements, such as not disclosing confidential information, not soliciting employees or clients, and not engaging in or assisting others in competition against the partnership.[4]

---

[3] The Complaint refers to and relies upon the CFLP, BGC and Newmark Partnership Agreements as well as Separation Agreements (*e.g.*, Compl. ¶ 3.) The Court therefore may consider them on a motion to dismiss. *See Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Partnership Agreements and Separation Agreements are attached as exhibits to the accompanying Declaration of Robert M. Vrana, Esq.

[4] *See* Vrana Decl. ¶ 4, Ex. C at §§ 2(b), 4; Vrana Decl. ¶ 3, Ex. B at §§ 2(b), 4; Vrana Decl. ¶ 5, Ex. D at §§ 2(b), 4; Vrana Decl. ¶ 6, Ex. E at §§ 2(b), 4; Vrana Decl. ¶ 7, Ex. F at § 2(b), 4.

McLoughlin and Miller's Separation Agreements (executed in 2020 and 2021, respectively) provide for the redemption of partnership units subject to certain terms and conditions.[5] They contain a broad release of "all claims . . . in law or equity . . . relating to . . . any alleged action, inaction, conduct, omission, or other circumstance or facts existing or arising through" the effective date of the applicable agreement.[6] Sofocleus's Separation Agreement contains a similarly broad release of claims.[7]

On March 9, 2023, Plaintiffs filed a Class Action Complaint against Defendants, alleging breach of contract and violation of Section 1 of the Sherman Act. In support of their breach of contract claims, Plaintiffs allege that Defendants "wrongfully failed and refused to make required payments" under one or more of the Partnership Agreements or the Separation Agreements. (*Id.* ¶ 116.) The Complaint does not specify which specific provisions of which contracts were allegedly breached as to each Plaintiff, or by which Defendant, or whether or how any particular Plaintiff satisfied conditions precedent entitling them to payment.

For their antitrust claim, Plaintiffs contend that the "incredulous exercise" of so-called "Forfeiture-for-Competition" provisions "operate[s] to effectuate a scheme by those in control of the Defendant partnerships to enrich themselves at the expense of their former employees." (Compl. ¶ 11.) The partnerships, Plaintiffs allege, are "effectively controlled by Howard Lutnick, Cantor Fitzgerald's CEO and Chairman," who supposedly "use[s] his effective control . . . to effectuate" this "scheme." (*Id.* ¶¶ 2, 7.) They claim that this scheme "is unlawful under a per se

---

[5] Vrana Decl. ¶ 4, Ex. C at§ 2(b) (providing for partnership units to be "redeemed for zero" and for certain consideration to be paid over four installments "subject to ... continued full compliance with this Agreement"); Vrana Decl. ¶ 3, Ex. B at§ 2(b) (same); Vrana Decl. ¶ 5, Ex. D at § 2(b) (same); Vrana Decl. ¶ 6, Ex. E at§ 2(b) (same).

[6] Vrana Decl. ¶ 4, Ex. C at § 5; see also Vrana Decl. ¶ 3, Ex. B at § 5 (same); Vrana Decl. ¶ 5, Ex. D at § 5 (same); Vrana Decl. ¶ 6, Ex. E at § 5 (same).

[7] *See* Vrana Decl. ¶ 7, Ex. F at § 5.

mode of analysis" or, alternatively, "under either a quick look or a rule of reason mode of analysis." (*Id.* ¶ 122.)

According to Plaintiffs, the relevant markets are "labor markets." (*Id.* ¶ 62.) Even so, they assert only that Defendants have market power in the industries in which they *sell their products and services*, namely the "Equity Capital Markets" industry and the "inter-dealer broker" industry. (*Id.* ¶¶ 66, 73.) "The United States," according to Plaintiffs, "is the relevant geographic market for both the Equity Capital Market and the Interdealer Broker Market," because "[b]oth BGC and CFLP maintain separate divisions for the United States." (*Id.* ¶¶ 76–77.)

Plaintiffs assert that restrictive covenants generally may affect earnings and employee mobility, they allege only vague references to inchoate competition harms that are not tied to any particular Plaintiff. (*Id.* ¶¶ 94–98.) Critically, however, Plaintiffs seek redress only for injuries that arise from Defendants' nonpayment of various classes of partnership units and not any harm to competition. (*E.g.*, *id.* ¶¶ 1, 7, 100, 108) Plaintiffs define the purported class as "all persons who were limited partners in any of Defendants' Partnership Agreements and who, after they left employment from Defendants, were denied payments of any Grant Units, Working Partner Units, or HDII Units they were owed." (*Id.* ¶ 102.)

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE A BREACH OF CONTRACT CLAIM.

Despite their claim that the agreements at issue "operate to effectuate a scheme by those in control of the Defendant partnerships to enrich themselves at the expense of their former employees" (*id.* ¶ 11), Plaintiffs allege remarkably few facts about those agreements. Plaintiffs fail to plead the basics required of every complaint for breach of contract, never alleging which specific provisions entitled them to payment, how any Defendant breached any such provision, or that Plaintiffs performed under the agreements which they claim provide them a right to

5

payment. Instead, Plaintiffs plead their claims so generally as to conceal their fundamental incompatibility with the requirements of a breach of contract claim or a class action.[8] Plaintiffs' generic and bare-bones allegations fail to allege a breach of contract and thus merit dismissal.

### A.    Plaintiffs' Allegations of "Wrongful" Non-Payment Are Insufficient.

To state a claim for breach of contract under Delaware law, a party must adequately allege: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff." *In re G-I Holdings, Inc.*, 755 F.3d 195, 202 (3d Cir. 2014) (citation omitted). A mere "formulaic recitation of the elements of a cause of action will not do"; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks omitted).

Yet conclusions are all that Plaintiffs offer. Plaintiffs do not even attempt to allege the specific contractual obligations set forth in each of the separate agreements referenced in the Complaint, nor identify which specific obligations owed to which Plaintiff any Defendant supposedly breached. Instead, Plaintiffs merely allege in conclusory fashion that Defendants "wrongfully failed and refused to make required payments" under multiple agreements. (Compl. ¶ 116.) Further, Plaintiffs do not allege any individualized facts or circumstances surrounding any alleged breach. Courts have not hesitated to dismiss breach of contract claims premised on similarly vague and conclusory allegations. *See, e.g.*, *FinancialApps, LLC v. Envestnet, Inc.*,

---

[8] Plaintiffs' failure to allege specific facts is underscored by Plaintiffs' impermissibly vague proposed class definition of "all persons who were limited partners in any of Defendants' Partnership Agreements and who, after they left employment from Defendants, were denied payment of any Grant Units, Working Partner Units, or HDII Units they were owed" without regard to the reason for the denial of payment. (Compl. ¶ 102.) Such a broad and vague class is improper under Rule 23. Defendants intend to move to strike Plaintiffs' class allegations at the earliest practicable time following the resolution of the instant motion, should it become necessary.

2020 WL 4569466, at *3 (D. Del. July 30, 2020), *report and recommendation adopted in relevant part*, 2020 WL 5552456 (D. Del. Sept. 15, 2020) ("Courts applying Delaware law to breach of contract claims have dismissed claims that fail to identify the express contract provision that was breached, and why such a provision was breached."); *see also Moretta v. Lexington Ins. Co.*,, 2016 WL 10570875, at *2 (D.N.J. Oct. 18, 2016) (holding plaintiff who alleged only that failure to pay was "wrongful[]" failed to "plead facts necessary to state claims for relief against the proposed defendants").

### B.     Plaintiffs Fail to Plead Their Own Performance.

Plaintiffs' breach of contract claim also fails because the Complaint does not allege the occurrence or performance of conditions precedent. *See generally Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 F. App'x 403, 405–06 (3d Cir. 2007) ("A complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim."); *see also Merchantwired, LLC v. Transaction Network Servs., Inc.*, 2003 WL 21689647, at *2 (Del. Super. Ct. July 16, 2003) (holding failure to allege performance of all conditions precedent "is fatal" to a breach of contract claim).

Each Partnership Agreement and Separation Agreement contains express conditions precedent to the payments Plaintiffs seek through their contract claims. Plaintiffs fail to allege, even generally, that any Plaintiff fulfilled the conditions to payment — and presumably they cannot. *Cf.* Fed. R. Civ. P. 9(c) (allowing plaintiffs to generally plead that "all conditions precedent have occurred or been performed"). Nor do Plaintiffs allege facts that would excuse their individualized failures to meet those conditions precedent. *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) (holding "failure to allege compliance with conditions precedent" requires dismissal, as a plaintiff must "alleg[e] performance of all conditions precedent generally or provid[e] an excuse for his failure to perform.").

## II.    PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER THE SHERMAN ACT.

Because Plaintiffs allege nonperformance of private agreements — rather than impaired competition in a market that would impact participants with no connection to Defendants — they have failed to state a claim for violation of the antitrust laws.

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must allege facts to support "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 442 (3d Cir. 1997). Plaintiffs fail to allege facts establishing any of these requirements: (1) they do not allege antitrust injury, (2) they do not allege a cognizable agreement, and (3) they do not allege anticompetitive effects such that any restraint of trade would be unreasonable. At bottom, Plaintiffs, highly compensated former limited partners, seek contractual payments and have failed to contort their individualized breach of contract claims into an antitrust claim. Additionally, Plaintiffs' antitrust claims are untimely.

### A.    Plaintiffs Have Not Pleaded Antitrust Injury.

To establish antitrust standing, Plaintiffs must do more than allege injury of some kind; they must allege "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant[s'] acts unlawful.'" *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 249–50 (3d Cir. 2022) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Plaintiffs, by contrast, allege injuries that have always been understood as sounding in contract: nonpayment of amounts owed under agreements between Plaintiffs and Defendants. That injury is not appropriately addressed under the antitrust laws and cannot form the basis of such a claim. *See Host Int'l, Inc.*, 32 F.4th at 250 ("An objectionable term in a commercial agreement, without more, is not an antitrust violation.")

8

The Supreme Court described the narrow category of cognizable antitrust injuries in *Brunswick*. There, plaintiffs challenged the defendant's acquisition of several failing bowling alleys and resulting increase in market share. 429 U.S. at 480. Plaintiffs' claimed injury was loss of the increased profits they would have experienced if the defendant had not saved the failing bowling centers. *Id.* at 480–81. The Court held that there was no *antitrust* injury from the plaintiffs not receiving increased profits by having competitors leave the market. *Id.* at 488. Because the "antitrust laws … were enacted for the protection of competition not competitors," the appropriate plaintiff would have been customers harmed by the defendant's increase in market share, not competitors who wished to enjoy higher market share themselves. Antitrust plaintiffs thus need to allege injury that "reflect[s] the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* at 489 (citation omitted).

The Third Circuit rigorously applies this antitrust standing requirement. For example, the Third Circuit held that taxi-drivers did not allege antitrust injury against Uber when they suffered decreased revenue but "fail[ed] to aver an antitrust injury, such as a negative impact on consumers or to competition in general, let alone any link between this impact and the harms Appellants have suffered." *Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 344 (3d Cir. 2018). And the Third Circuit has explained what antitrust injury looks like in the context of employment: plaintiffs allege antitrust injury when they allege that they have been unable to secure employment because of anticompetitive conduct, such as when their employers have conspired not to hire each other's employees. *Eichorn v. AT&T Corp.*, 248 F.3d 131, 141 (3d Cir. 2001).

Plaintiffs cannot articulate an injury *they* suffered other than the generic assertion that "Defendants have refused to pay Plaintiffs the full amounts they are owed." (Compl. ¶ 60.) This

conclusory allegation confirms that Plaintiffs have not pled antitrust injury: If Plaintiffs were not paid because they violated a noncompete provision in one of the Agreements, then Plaintiffs must have secured new employment—and they cannot show the antitrust injury required by *Eichorn*. Or, if Plaintiffs were not paid for some other reason, then Plaintiffs have not suffered an injury with any relation to the allegedly anticompetitive conduct.

Moreover, even if Plaintiffs had adequately pled that they were owed additional compensation under the Agreements, the alleged nonpayment does not harm *competition* in the labor market, but instead harms only Plaintiffs. Like the plaintiffs in *Brunswick*, Plaintiffs would have experienced an identical harm—nonpayment— if Defendants simply breached the contract (as Plaintiffs also allege) or if Plaintiffs had failed to satisfy another contractual condition unrelated to competition, such as by misappropriating a Defendant's trade secrets.

Plaintiffs' alleged injuries derive from their own contractual choices: choosing to sign agreements that prohibited them from competing and then choosing to compete regardless. Courts consistently recognize that plaintiffs who voluntarily covenant not to compete cannot allege antitrust injury, as their harm does not derive from reduced competition in the market they promised to leave. *See McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1374 (8th Cir. 1983) (plaintiffs signed a five-year covenant not to compete and thus lacked standing to sue for anticompetitive conduct ); *A.D.M. Corp. v. Sigma Instruments, Inc.*, 628 F.2d 753, 754 (1st Cir. 1980) (where plaintiff contracted to refrain from competition and alleged breach of that contract by defendant, the injury was "lacking the essential connection between injury and the aims of the antitrust laws necessary to give appellant standing").

Plaintiffs' failure to allege antitrust injury is dispositive; their claims should be dismissed on this basis.

**B.      Plaintiffs Do Not Allege a Cognizable Conspiracy.**

Section 1 does not reach alleged conspiracies in which the participants are within the same corporate enterprise. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769–70 (1984); *see also Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010). Separate entities within the same corporate structure — such as Defendants — are not capable of conspiring to violate the antitrust laws. *Eichorn*, 248 F.3d at 139 ("Because the Preliminary Net was an internal restriction between a single corporation, AT&T, and its wholly owned subsidiaries, Lucent and NCR, and not an agreement between separate corporate identities, it was not a violation of § 1 of the Sherman Act."). This rule extends not just to corporate entities like parent corporations and their subsidiaries, but also to individuals such as owners, officers, and employees of a single enterprise. *Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 54 F.3d 1125, 1132 (3d Cir. 1995).

Plaintiffs allege that the so-called "Forfeiture-for-Competition" provisions "operate to effectuate a scheme by those in control of the Defendant partnerships to enrich themselves at the expense of their former employees." (Compl. ¶ 11.) Plaintiffs claim that the Defendant partnerships "all effectively controlled by Howard Lutnick, Cantor Fitzgerald's CEO and Chairman." (*Id.* ¶ 2. *See also id.* ¶ 7 (alleging that Mr. Lutnick uses his "effective control across each of these entities to effectuate a scheme . . .").)

But a purported "scheme" by "those in control of the partnerships" cannot, as a matter of law, satisfy Section 1, even where the alleged scheme was imposed on partners, officers or employees. As the Third Circuit has recognized, *Copperweld* "made clear that Section 1 does not capture coordinated activity among the employees and officers of the same firm or police 'internal agreements' between a corporation and these individuals." *Siegel Transfer, Inc.*, 54 F.3d at 1134; *see also Koenig v. Automatic Data Processing*, 2003 U.S. Dist. LEXIS 26812, at

*12–13 (D.N.J. 2003) ("Koenig accuses ADP of violating federal antitrust law by its 'policy and practice' of forcing him to sign noncompetition agreements which far exceed any 'legitimate business purpose' of preventing outgoing employees from misappropriating trade secrets or clients. But it is evident that an attack on the existence of the non-compete language in the severance agreement falls short of establishing that ADP engaged in illegal, concerted action."); *Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946 F. Supp. 495, 499 (E.D. Ky. 1996) (employees signing non-compete with employer cannot "as a matter of law . . . provide the plurality of actors imperative for a § 1 conspiracy"). Plaintiffs fail to allege the existence of any conspirator outside of the same corporate family to which all Defendants belong; consequently, they have failed to plead a Section 1 conspiracy.

**C.      Plaintiffs Fail to Allege That Their Restrictive Covenants Unreasonably Restrain Trade.**

Plaintiffs have also failed to allege an unreasonable restraint of trade. Plaintiffs do not allege one of the small number of agreements that is a *per se* antitrust violation. They must thus satisfy the rule of reason, which requires Plaintiffs to define a market, allege market share, and show a substantial anticompetitive effect that harms consumers. Plaintiffs do not even attempt to meet these obligations.

**1.      Plaintiffs' Restrictive Covenants Are Properly Analyzed Under the Rule of Reason.**

"Determining whether a restraint is undue for purposes of the Sherman Act presumptively calls for what [the Supreme Court] ha[s] described as a rule of reason analysis." *NCAA v. Alston*, 141 S. Ct. 2141, 2151 (2021) (internal quotation marks omitted). The only exception is the narrow class of restraints which "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit" that courts have deemed them *per se* unlawful. *State*

*Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). In the Complaint, Plaintiffs nakedly assert without support that the alleged conduct may be unlawful *per se*. (*See* Compl. ¶ 122.) Plaintiffs are wrong.

*Per se* analysis is inappropriate here for two separate reasons. First, to the extent Plaintiffs allege agreements that meet the *Copperweld* test (and they do not), the restrictive covenants in the partnership agreements are vertical in nature and therefore evaluated under the rule of reason. *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1368 (3d Cir. 1996) ("The Supreme Court has instructed that vertical restraints of trade . . . are evaluated under the rule of reason."); *see also Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). Indeed, courts consistently characterize employer-employee agreements as vertical restraints.[9]

Second, and regardless of whether the restrictive covenants are viewed as horizontal or vertical agreements, they are not among the limited categories for which *per se* analysis is permitted. "[T]he *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007). "The Supreme Court has been cautious in extending the per se approach to claims that fall outside certain previously enumerated categories of liability," such as horizontal price-fixing agreements or group boycotts, and courts accordingly

---

[9] *See Aya Healthcare Servs. v. AMN Healthcare, Inc.*, 2018 WL 3032552, at *12 (C.D. Cal. June 19, 2018) (a restrictive covenant that is "a single employer's agreement with one or more employees" is "purely vertical.") (quoting Phillip E. Areeda & Herbert Hovenkamp, An Analysis of Antitrust Principles and Their Application (4th ed. 2013) ¶ 2013b); *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 2017 WL 3433131, at *17 (S.D. Ohio Aug. 9, 2017), *aff'd*, 922 F.3d 713 (6th Cir. 2019) (restrictive covenants between "between the employer and employee" are "purely vertical restraints"); *cf. Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 28 (2d Cir. 2015) (alleged agreement between Marriott and union of hotel employees was "at most a vertical agreement between buyers and sellers at different levels of the market, rather than a horizontal agreement between competitors").

"have uniformly found that covenants not to compete should be examined under the rule of reason." *Eichorn*, 248 F.3d at 143–44.

### 2.      Plaintiffs Fail to Allege a Violation of the Rule of Reason.

Under the rule of reason, "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Am. Express Co.*, 138 S. Ct. at 2284. As an initial matter, this requires Plaintiffs to make allegations "defining the relevant market," *Queen City Pizza*, 124 F.3d at 436, including both product and geographic markets, *Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 513 (3d Cir. 1998). As the Third Circuit has explained,

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Queen City Pizza*, 124 F.3d at 436.

Plaintiffs, however, have failed to allege any relevant market. Given that the restrictive covenant relates to employment (Compl. ¶ 95), Plaintiffs appear to recognize that the relevant markets must be "labor markets," (*Id.* ¶ 62). But they make no factual allegations regarding any actual labor market, instead cursorily asserting that two of the Defendants have market power in the non-labor markets in which they *sell* their products or services: the Equity Capital Market and Interdealer Broker Market. (*Id.* ¶¶ 66, 73.) There are no allegations whatsoever regarding, for example, what companies compete to hire employees like Plaintiffs, or the Defendants' respective market shares in any labor market. This failure alone compels dismissal. *See Koenig*, 2003 U.S. Dist. LEXIS 26812, at *14–15 (dismissing Sherman Act claim based on a restrictive covenant for failure to allege, among other things, a proper product market). And even Plaintiffs' discussion of

14

services markets lacks the necessary allegations as to interchangeability and cross-elasticity. *See Queen City Pizza*, 124 F.3d at 436.

Plaintiffs likewise offer just two paragraphs on the relevant geographic market, claiming "the United States is the relevant geographic market for both the Equity Capital Market and the Interdealer Broker Market," because "[b]oth BGC and CFLP maintain separate divisions for the United States." (Compl. ¶¶ 76–77.) But two Defendants' internal organizations *for purposes of selling products and services* says nothing about the geographic boundaries for any relevant labor market—*i.e.*, the geographic area from which Defendants or other employers may draw employees—much less the interchangeability or cross-elasticity of potential employees. *See Queen City Pizza*, 124 F.3d at 43. Moreover, without any meaningful factual allegations, Plaintiffs have not stated a remotely plausible claim that Defendants have market power with respect to the *entire United States labor market*.[10]

Plaintiffs also fail to allege "substantial anticompetitive effect that harms consumers" even with respect to their defective markets. *Am. Express Co.*, 138 S. Ct. at 2284. At the pleading stage, Plaintiffs can carry their burden only by "plead[ing] "actual detrimental effects [on competition] such as reduced output, increased prices, or decreased quality in the relevant market.'" *LifeWatch Servs. v. Highmark, Inc.* 902 F.3d 323, 336 (3d Cir. 2018) (quoting *Am. Express Co.*, 138 S. Ct. at 2284). Critically, Plaintiffs must establish injury to *competition*—not injury to themselves as participants in the labor market. Thus, a vague allegation that the challenged agreements harmed *Plaintiffs* (*see, e.g.*, Compl. ¶¶ 94–95) does not suffice to state a claim. *Id.*

---

[10] Indeed, five of the seven Plaintiffs (Sofocleus, Lewis, Bunnett, Robertshaw and Scott) reside and work outside of the United States, placing them outside of even the patently overbroad alleged market.

Plaintiffs allege no facts to support actual detrimental effects in any relevant market. They allege generically that restrictive covenants have anticompetitive effects "[g]enerally" and conclusorily allege that the Agreements have these same effects. *Id.* ¶¶ 94–98 (emphasis omitted),. However, Plaintiffs assert no *facts* concerning these alleged effects, such as the wages of employees of Defendants or any other company, or any facts supporting the conclusion that wages have been reduced or new businesses have not been formed.

"The antitrust laws were not designed to protect every uncompetitive activity, but rather only those activities that have anti-competitive effects on the market as a whole." *Eichorn*, 248 F.3d at 148; *see also Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399, 405 (3d Cir. 2016) (Section 1 claim fails where "plaintiff shows effects only on a small subset of [the] market and makes no attempt to show broader effects"); *Anand v. Indep. Blue Cross*, 2021 WL 3128690, at *9 (E.D. Pa. July 23, 2021), *aff'd in relevant part*, 2022 WL 2339476 (3d Cir. 2022) (failure to allege actual effects when "[plaintiff] only alleges that IBC controlled and reduced physician fee schedules, removed him from the network, and declined to cover his treatment of patients. . . . These alleged injuries are personal injuries that cannot support a finding that plaintiff's exclusion from the market affected the price or supply of goods to the market."); *Cable Line, Inc. v. Comcast Cable Communs. of Pa., Inc.*, 2017 WL 4685359, at *4 (M.D. Pa. Oct. 18, 2017), *aff'd*, 767 F. App'x 348 (3d Cir. 2019) ("The case law in this circuit is replete with examples where plaintiffs failed to establish an antitrust claim when they have only alleged injury to their own welfare."). Plaintiffs have failed to allege a defined market or harm to competition therein. Therefore, Plaintiffs' antitrust claims must be dismissed.

Plaintiffs allege at most that the Defendants denied Plaintiffs contractual payments. Indeed, the purported class is defined as individuals who "were denied payment of any Grant Units,

Working Partner Units, or HDII Units they were owed." (Compl. ¶ 102.) This does not remotely allege anti-competitive effects on the market as a whole.

### D. Plaintiffs' Sherman Act Claims Are Untimely.

Finally, Plaintiffs' Sherman Act claims are barred by the Act's four-year statute of limitations. *See* 15 U.S.C. § 15b. A Sherman Act claim accrues when "a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch.*, 401 U.S. 321, 338 (1971). The cause of action that arises at the time of the injurious act includes "not only those damages which he has suffered at the date of accrual, but also those which he will suffer in the future from the particular invasion." *Id.* at 339. Plaintiffs seek to bring claims on behalf of individuals allegedly harmed by restrictive covenants that each of them agreed to prior to 2019 and that the purported "scheme" began almost 15 years ago. (*See* Compl. ¶¶ 1, 13–19.) Accordingly, Plaintiffs' claims accrued more than four years ago and are barred by the statute of limitations, even if they claim damages are suffered within the last four years.

## III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BGC OR NEWMARK.

### A. Plaintiffs McLoughlin's and Miller's Claims Are Time-Barred and Released.

The BGC and Newmark partnership units held by McLoughlin and Miller were redeemed following their separations in 2020 and 2021, respectively, and they each agreed to certain terms and conditions in exchange for a series of conditional payments.[11] Critically, their present claims

---

[11] *See* Compl. ¶ 43 ("When a partner withdraws or is terminated, Defendants redeem the former partner's Grant Units and HDII Units, and make payments to the former partner in four installment over the succeeding four years."); Vrana Decl. ¶ 4, Ex. C at § 2(b) (providing for partnership units to be "redeemed for zero" and for certain consideration to be paid over four installments "subject to ... continued full compliance with this Agreement"); Vrana Decl. ¶ 3, Ex. B at § 2(b) (same); Vrana Decl. ¶ 5, Ex. D at§ 2(b) (same); Vrana Decl. ¶ 6, Ex. E at § 2(b) (same). The Separation Agreements, which feature prominently in the Complaint (*see* Compl. ¶¶ 51–57, 95, 107, 116, 120) but were not attached as exhibits, are properly considered on a motion to dismiss. *See supra* n.3.

are time-barred by the one-year limitations period that each of them agreed to in the BGC and Newmark Partnership Agreements. *See PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 318 n.13 (3d Cir. 2021) (endorsing Rule 12(b)(6) dismissal based on limitations defense where "the time alleged in the statement of a claim shows" that the action is untimely).

McLoughlin and Miller each agreed:

> Notwithstanding anything in this Agreement or in law or equity to the contrary, no Founding/Working Partner and no REU Partner may institute any action challenging, directly or indirectly, the terms, conditions or validity or any other matter related to or arising out of any redemption by the Partnership of Units . . . held by such Partner, whether such action is based (in whole or in part) in contract, tort and/or any duty otherwise existing in law or equity (a "Challenge") unless such Challenge is instituted on or prior to the first anniversary (the "Challenge Deadline") of the later of (i) the effective date of the challenged redemption (the "Effective Date") and (ii) the giving of notice by the Partnership with respect to such challenged redemption. If a Challenge is not instituted by such Partner on or prior to the Challenge Deadline, such Partner shall be thereafter foreclosed from instituting any Challenge.

(Compl., Ex. 1 at § 13.19(a); *see also* Ex. 2 at § 13.19(a) (same)). The Separation Agreements both effectuated the redemptions and provided written notice of those redemptions such that this one-year limitations period for "any action challenging, directly or indirectly, the terms, conditions or validity or any other matter related to or arising out of" those redemptions began to run upon the execution of those agreements in 2020 and 2021, respectively. (*See* Vrana Decl. ¶ 3, Ex. B; Vrana Decl. ¶ 4, Ex. C.) Such a contractually shortened limitations period is valid and enforceable under Delaware law, *see MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 332 (D. Del. 2019) ("[U]nder Delaware law, 'parties may contractually agree to a period of limitations shorter than that provided for by statute, so long as this shortened period is reasonable.'") (quoting *Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, 2013 WL 6186326, at *7 (Del. Ch. Nov. 27, 2013)), and by its plain terms is broad enough to encompass both the contract and antitrust

18

claims now asserted well over a year after the limitations period had run. *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 287–88 (4th Cir. 2007) (limitations period for antitrust claims may be contractually shortened to one year).

Moreover, in their Separation Agreements, McLoughlin and Miller each released all claims against Defendants, including BGC and Newmark. Specifically, each agreed that they:

> release[] and discharge[] [BGC] and all of its Affiliates … from all claims … in law or equity, other than with respect to enforcement of the terms of this Agreement, for, relating to, or arising out of any alleged action, inaction, conduct, omission, or other circumstance or facts existing or arising through the date that this Agreement becomes effective … by reason of any matter whatsoever, including without limitation any of the foregoing relating to Partner's employment by and partnership interests or rights … [and] whether or not based on … [certain agreements], common law, statute, rule or ordinance, whether federal or state . . . [and] any right to participate in and recover damages (or any other form of relief) in any class (or related) action . . . .

(Vrana Decl. ¶ 4, Ex. C at § 5; *see also* Vrana Decl. ¶ 3, Ex. B at § 5 (same); Vrana Decl. ¶ 5, Ex. D at § 5 (same); Vrana Decl. ¶ 6, Ex. E at § 5 (same).)

Because McLoughlin's and Miller's claims stated in the Complaint are both time-barred and released, they should be dismissed with prejudice.

### B.     The Other Plaintiffs Do Not State Any Claim Against BGC or Newmark.

Apart from McLoughlin and Miller, none of the other Plaintiffs alleges that they had any relationship with BGC or Newmark or were somehow harmed by the BGC or Newmark Partnership Agreements (to which they were not a party). As such, there clearly can be no breach of contract claim against BGC or Newmark on behalf of the other Plaintiffs. At most, those Plaintiffs generally allege that the Defendants were engaged in a conspiracy that they claim violated antitrust law. However, as explained above, those allegations fail to state any claim for

several reasons including that the Defendants are all part of one enterprise and cannot be deemed to have conspired with one another in violation of the antitrust laws. (*See supra* at pp. 11–12.)

Because no Plaintiff can state a valid claim against BGC or Newmark, the claims against Defendants BGC and Newmark should be dismissed with prejudice. *Stewart v. Jersey City Mun. Utils. Auth.*, 2005 WL 1606386, at \*2 (D.N.J. July 5, 2005) (dismissing complaint with prejudice; "[a]s statute of limitations defense is grounds for a 12(b)(6) dismissal on the merits, as this defect can never be cured.").

### C.   Plaintiff Sofocleous Released His Claims.

The claims of Plaintiff Sofocleous, as against all Defendants, should be dismissed. He too signed a Separation Agreement with a similarly broad release of claims that encompasses any contractual or statutory claim he might have had against the Defendants. (*See* Vrana Decl. ¶ 7, Ex. F at § 5.) For this additional reason, Plaintiff Sofocleus cannot state a claim against any of the Defendants and his claims should be dismissed with prejudice.

### CONCLUSION

The Complaint should be dismissed with prejudice. In the alternative, all claims against BGC and Newmark should be dismissed with prejudice, and the claims of Plaintiffs McLoughlin, Miller, and Sofocleous should be dismissed with prejudice.

Dated: April 28, 2023

| | |
|---|---|
| CANTOR FITZGERALD | YOUNG CONAWAY STARGATT |
| David A. Paul | & TAYLOR, LLP |
| Mitchell Nobel | |
| 110 E. 59th Street, 7th Floor | */s/ Anne Shea Gaza* |
| New York, New York 10022 | C. Barr Flinn (No. 4092) |
| (212) 610-2298 | Anne Shea Gaza (No. 4093) |
| dpaul@cantor.com | Robert M. Vrana (No. 5666) |
| mitchell.nobel@cantor.com | Rodney Square |
| | 1000 North King Street |
| | Wilmington, Delaware 19801 |
| | (302) 571-6600 |

bflinn@ycst.com
agaza@ycst.com
rvrana@ycst.com

SIDLEY AUSTIN LLP
Benjamin R. Nagin
Eric G. Hoffman
787 Seventh Avenue
New York, NY 10019
(212) 839 5911
bnagin@sidley.com

Tacy F. Flint
Frank J. Favia, Jr.
One South Dearborn
Chicago, IL 60603
(312) 853 7875
tflint@sidley.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 28, 2023, a copy of the foregoing

document was served on the counsel listed below in the manner indicated:

**<u>BY EMAIL</u>**

Blake A. Bennett
COOCH AND TAYLOR, P.A.
1007 N. Orange St., Suite 1120
Wilmington, DE 19801
bbennett@coochtaylor.com

Kyle W. Roche
KYLE ROCHE P.A.
260 Madison Avenue, 8th Fl.
New York, NY 10016
kyle@kyleroche.law

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
C. Barr Flinn (No. 4092)
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
bflinn@ycst.com
agaza@ycst.com
rvrana@ycst.com
(302) 571-6600

*Attorneys for Defendants*