IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SHAWN MCLOUGHLIN, ROBERT MILLER, ANGELO SOFOCLEOUS, ANDREW LEWIS, CHEYNE BUNNETT, TOM ROBERTSHAW, and OLIVIA SCOTT (as the personal representative of the ESTATE OF RUSSELL SCOTT), | : : : : : : : : | Civil Action No. 23-CV-256-CFC |
| Plaintiffs, | : : |  |
| v. | : : |  |
| CANTOR FITZGERALD, L.P., BGC HOLDINGS, L.P., and NEWMARK HOLDINGS, L.P., | : : : : |  |
| Defendants. | : : : : |  |

Blake A. Bennett, COOCH & TAYLOR P.A., Wilmington, Delaware; Velvel Freedman, FREEDMAN NORMAND FRIEDLAND LLP, Miami, Florida; Amos Friedland, Kyle W. Roche, Alex Potter, Stephen Lagos, FREEDMAN NORMAND FRIEDLAND LLP, New York, New York

　　　*Counsel for Plaintiffs*

C. Barr Flinn, Anne Shea Gaza, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Benjamin R. Nagin, Eric G. Hoffman, SIDLEY AUSTIN LLP, New York, New York; Tacy F. Flint, Frank J. Favia, Jr., SIDLEY AUSTIN LLP, Chicago, Illinois

　　　*Counsel for Defendants*

## **MEMORANDUM OPINION**

December 2, 2024
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiffs Shawn McLoughlin, Robert Miller, Angelo Sofocleous, Andrew Lewis, Cheyne Bunnett, Tom Robertshaw, and Olivia Scott (as the personal representative of the estate of Russell Scott) filed the operative Second Amended Complaint (the Complaint) in this putative class action in February 2024 against three affiliated Delaware limited partnerships: Defendants Cantor Fitzgerald, L.P. (Cantor Fitzgerald), BGC Holdings, L.P. (BGC), and Newmark Holdings L.P. (Newmark). D.I. 42. The Complaint has four counts. In Count I, Plaintiffs allege that Defendants Cantor Fitzgerald and BGC employed non-compete provisions in partnership and separation agreements in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. D.I. 42 ¶¶ 217–22. In Count II, Plaintiffs seek a judgment against all Defendants in the form of a declaration that the challenged non-compete provisions are unenforceable as a matter of law because they violate the Sherman Act and that Defendants wrongfully withheld from Plaintiffs and their proposed class vested property interests through the exercise of the non-compete provisions. D.I. 42 ¶¶ 224–25. In Count III, Plaintiffs allege a breach of contract claim against all Defendants. D.I. 42 ¶¶ 227–29. In Count IV, Plaintiffs McLoughlin and Sofocleous allege that all Defendants breached the implied covenant of good faith and fair dealing. D.I. 42 ¶¶ 231–33.

Pending before me is Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all four counts for failure to state a claim (D.I. 44). To survive a motion to dismiss, the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555. In assessing the plausibility of a claim, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

## I.

Defendants are affiliated financial services firms that collectively employ more than 12,000 people. D.I. 42 ¶ 2. Plaintiffs were limited partners of one or more of the Defendants. Each Defendant issued its limited partnership interests pursuant to a partnership agreement. The partnership agreements of each Defendant have non-compete provisions that authorize the applicable Defendant to withhold distributions otherwise owed to a partner who is terminated by or withdraws from that Defendant if the former partner engages in specified activities in competition with Defendants or their affiliates. D.I. 42 ¶¶ 38–56. The

2

provisions remain operative for four years after a partner's termination or withdrawal. D.I. 42 ¶ 57.

Plaintiffs left the employ of or were terminated by at least one of Defendants between 2019 and 2020. D.I. 42 ¶¶ 18–24. Two Plaintiffs—McLoughlin and Sofocleous—entered into separation agreements with BGC and Cantor Fitzgerald, respectively, after the termination of their respective limited partnerships with Defendants. D.I. 42 ¶¶ 71, 74. Their separation agreements contain non-compete provisions that, for purposes of the pending motion, are in all material respects the same as the non-compete provisions in the partnership agreements. *See* D.I. 26-2 §§ 2(b), 4(h); D.I. 26-5 §§ 2(b), 4(h).

Plaintiffs allege that Defendants relied on the non-compete provisions of their respective partnership agreement or separation agreement with each Plaintiff to deny that Plaintiff at least one post-termination disbursement. D.I. 42 ¶¶ 70, 73, 76. Plaintiffs purport to bring this suit "on behalf of all persons who were limited partners in any of Defendants' Partnership Agreements and who, after they left employment from Defendants, were denied payment[s]" they would have been owed had Defendants not enforced the non-compete provisions in Defendants' partnership and separation agreements. D.I. 42 ¶ 204.

II.

Defendants argue that Counts I, II, and III should be dismissed because Plaintiffs have not alleged they suffered an antitrust injury. I agree.

To state an actionable claim under the Sherman Act, the plaintiff must plausibly allege "the existence of *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (emphasis in the original) (internal quotation marks and citation omitted). Plaintiffs describe their alleged injury as "suffering forfeitures as punishment *for competing*." D.I. 46 at 3 (emphasis added); *see also* D.I. 42 ¶ 202 ("Plaintiffs and each class member allege that Defendants' anticompetitive conduct has caused them to forfeit substantial compensation they received in connection with their employment with Defendants."); D.I. 42 ¶ 204 (identifying plaintiff class as "all persons who were limited partners in any of Defendants' Partnership Agreements and who, after they left employment from Defendants, were denied payment[s]" when Defendants enforced the non-compete provisions in Defendants' partnership and separation agreements). But as the Supreme Court held in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), "[t]he antitrust laws . . . were enacted for the protection of competition not competitors," and "[i]t is inimical to the purposes of these laws to award damages for" "profits

4

[plaintiffs] would have realized had competition been reduced." *Id.* at 488 (internal quotation marks and citation omitted). Because Plaintiffs were required to forego competition with Defendants to realize the disbursements they seek to recover, their alleged injury is exactly the type of injury *Brunswick* says is inimical to the purposes of the antitrust laws and insufficient to sustain a Sherman Act claim.

Quoting *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140–42 (3d Cir. 2001), Plaintiffs insist that "'agreements which preclude employees from seeking employment from a third[-]party employer *can* give rise to antitrust injury.'" D.I. 46 at 4 (quoting *Eichorn*, 248 F.3d at 142) (emphasis added by Plaintiffs). The clause in *Eichorn* Plaintiffs quote from reads in full: "[S]everal courts since *Brunswick* have found that no-hire agreements which preclude employees from seeking employment from a third party employer can give rise to antitrust injury." 248 F.3d at 141–42. The key words in the clause for present purposes are "no-hire" and "third party employer." The Court in *Eichorn* was referring to cases in which courts held that agreements between or among employers not to hire each other's employees could cause those employees antitrust injury.[1] Those holdings

---

[1] Specifically, the Court was referring to *Cesnick v. Chrysler Corp.*, 490 F. Supp. 859 (M.D. Tenn. 1980), *Roman v. Cessna Aircraft Co.*, 55 F.3d 542 (10th Cir. 1995), and *Law v. Nat'l Collegiate Athletic Assoc.*, 134 F.3d 1010 (10th Cir. 1998). The Court summarized the holdings of these cases as follows: "In *Cesnick* . . . plaintiffs who were precluded from seeking re-employment at Chrysler when their division

are entirely consistent with *Brunswick*. Agreements among competing employers

not to hire each other's employees reduce competition in the market for the

services of the employees and therefore can cause antitrust injury to those

employees. As the Court explained in *Eichorn*:

> While employees who are precluded from selling their labor have not necessarily suffered an antitrust injury, "employees may challenge antitrust violations that are premised on restraining the employment market." Phillip Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 377a (rev. ed.1995) (footnotes omitted); *see also* Brian R. Henry, 'Sorry, We Can't Hire You ... We Promised Not To': The Antitrust Implications of Entering Into No–Hire Agreements, 11 Fall Antitrust 39 (1996) ("Most courts considering the issue have held that employees suffer 'injury' recognized by the antitrust laws when their employment opportunities are restricted by a no-hire agreement between potential employers, and thus have standing to sue the entity imposing such a provision.").

248 F.3d at 140–41.

Unlike the plaintiffs in the cases discussed in *Eichorn*, Plaintiffs in this case

do not allege that Defendants have no-hire agreements with competitors; nor do

---

was sold to a third party suffered an antitrust injury." 248 F. 3d at 142. "[I]n *Roman . : .* the Court of Appeals for the Tenth Circuit held that a plaintiff precluded from seeking employment as an airplane engineer with the Cessna Aircraft Company because of an agreement between Cessna and the Boeing Company not to hire each other's engineers suffered an antitrust injury." *Id.* In *Law*, the Tenth Circuit held that a "coach whose opportunities in employment market were impaired by [an] agreement among members of NCAA to limit the maximum compensation paid to coaches suffered [an] antitrust injury." *Id.*

they allege that Defendants' competitors refused to extend them employment opportunities or that Plaintiffs were otherwise denied employment opportunities in the financial services market. On the contrary, Plaintiffs allege that they competed with Defendants after they left Defendants' employ and that because they did so the challenged non-compete provisions deprived them of payments they would have otherwise received under their partnership and separation agreements. *See* D.I. 42 ¶¶ 12, 18–24, 70–76, 197–200, 202; *see also* D.I. 46 at 3 (Plaintiffs describing their alleged injury as "suffering forfeitures as punishment *for competing*" (emphasis added)). Under *Brunswick*, that alleged harm cannot qualify as an antitrust injury, and therefore Plaintiff's Sherman Act claim in Count I fails as a matter of law.

Counts II and III are both premised on an actionable Sherman Act violation. In Count II, Plaintiffs seek a declaratory judgment that the challenged non-compete provisions of Defendants' partnership and separation agreements "are illegal and unenforceable because they violate the Sherman Act." D.I. 42 ¶¶ 224–25. In Count III, Plaintiffs allege that the non-compete provisions in their partnership and separation agreements are unenforceable because they violate the Sherman Act and that therefore Defendants' reliance on those provisions to withhold disbursements Plaintiffs were otherwise owed under the partnership agreements breached Defendants' contractual obligations. D.I. 42 ¶¶ 227–29. Defendants argue, and

7

Plaintiffs do not dispute, that if Plaintiffs' antitrust claim fails, their declaratory judgment and breach of contract claims also fail. D.I. 45 at 19; *see generally* D.I. 46. Accordingly, having found that Plaintiffs have failed to allege a cognizable antitrust claim, I will dismiss Counts II and III.

III.

In Count IV of the Complaint, Plaintiffs McLoughlin and Sofocleous allege that "in the event that the Court rules that [the challenged non-compete provisions are] enforceable and do[ ] not violate federal antitrust law," Defendants breached the implied covenant of good faith and fear dealing under Delaware law. D.I. 42 ¶ 231. The Complaint alleges that this breach occurred when, "[a]fter being fully informed of the employment that McLoughlin and Sofocleous intended to accept [with competitors of Defendants], Defendants took . . . actions in bad faith to lure McLoughlin and Sofocleous into a false sense of security" that Defendants would not rely on the non-compete provisions of their partnership and separation agreements to withhold payments that McLoughlin and Sofocleous were otherwise owed. D.I. 42 ¶¶ 232–33.

With respect to McLoughlin, the Complaint alleges that that BGC's president repeatedly told him that BGC would not withhold his disbursements "so long as he did not go to [work for] one of BGC's large competitors like Tradition and TP ICAP." D.I. 42 ¶ 196. According to the Complaint, "[r]elying on those

8

representations, McLoughlin sat out of employment a full year and did not pursue

opportunities with Tradition and TP ICAP and instead, he opted to consult with

LPS Partners." D.I. 42 ¶ 197.  The Complaint further alleges that "[c]onsistent

with this understanding, McLoughlin stayed in touch with [BGC's CEO] for more

than a year after [McLoughlin] left BGC and offered to help [the CEO] hire

employees [whom] [the CEO] wanted to terminate." D.I. 42 ¶ 197.  According to

the Complaint, shortly after McLoughlin started working for LPS Partners, BGC's

CEO "falsely accused [McLoughlin] of attempting to recruit another BGC partner"

and then, "[d]espite having no evidence that this occurred, and despite McLoughlin

explaining to [BGC's CEO] that there was no truth to the accusation, BGC

triggered the [challenged non-compete provisions] to deny paying [McLoughlin]

his vested property interests." D.I. 42 ¶ 198.

With respect to Sofocleous, the Complaint alleges that he "repeatedly sought

ought out advice from [Cantor Fitzgerald] on whether or not he could join

Marex—a financial services platform in London—and whether or not [Cantor

Fitzgerald] believed such activity would trigger [the challenged non-compete

provisions in Cantor Fitzgerald's partnership and separation agreements]." D.I. 42

¶ 199.  According to the Complaint, Sofocleous believed that working for Marex

was not prohibited by the agreements' non-compete provisions because "Marex

serviced clients in an industry and geography that [Cantor Fitzgerald] had

abandoned," and, "[a]fter Sofocleous received no response from his outreach to [Cantor Fitzgerald], he joined Marex." D.I. 42 ¶¶ 199–200. The Complaint further alleges that shortly after Sofocleous joined Marex, Cantor Fitzgerald informed him that it would withhold his partnership interests from disbursement pursuant to the non-compete provisions of his partnership and separation agreements. D.I. 42 ¶ 200.

Defendants argue that these allegations are insufficient to plead a breach of the implied covenant of good faith and fair dealing under Delaware law because they do not plausibly imply that Defendants subjectively acted in bad faith. I agree.

Under Delaware law, a claim for a breach of the covenant of good faith and fair dealing in the context of a partnership agreement requires an allegation of subjective bad faith. *Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 2023 WL 4571932, at *9 (Del. Ch. July 17, 2023). A determination made in connection with a partnership agreement is made in good faith unless it is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *DV Realty Advisors LLC v. Policemen's Annuity & Ben. Fund of Chicago*, 75 A.3d 101, 110 (Del. 2013). In this case, the Complaint itself alleges that Defendants relied on the challenged non-compete provisions to withhold disbursements otherwise owed to McLoughlin and Sofocleous. D.I. 42

10

¶¶ 198, 200. The Complaint also alleges that McLoughlin and Sofocleous were employed by Defendants' competitors within two years after they stopped working for Defendants. *See* D.I. 42 ¶¶ 98, 199. Thus, the allegations in the Complaint plausibly imply that Defendants acted in good faith when they withheld disbursements from McLoughlin and Sofocleous.

Plaintiffs counter that "Defendants ignore the [Complaint's] allegations of misrepresentation and deceit." D.I. 46 at 19. But there are no allegations that Defendants made misrepresentations to or otherwise deceived Sofocleous. According to the Complaint, Sofocleous joined Marex "[a]fter he received no response" to his repeated inquiries about whether he could do so without triggering the non-compete provisions. D.I. 42 ¶ 200. With respect to McLoughlin, although the Complaint alleges that BGC orally represented that it would not enforce the non-compete provisions against him so long as he did not work for large competitors, the separation agreement McLoughlin signed expressly states that "[n]o modification or waiver of any provision hereof shall be binding on any Party unless in writing and signed by all of the Parties." D.I. 26-2 § 8(a). Finally, even if, as the Complaint alleges, BGC's CEO falsely accused McLoughlin of attempting to recruit another BGC partner, the Complaint does not allege that this accusation was the direct cause of BGC's denial of disbursements to McLoughlin. *See* D.I. ¶ 198.

In sum, because Plaintiffs engaged in competition with Defendants, it cannot be said that Defendants' decision to enforce the non-compete provisions in their partnership and separation agreements with Plaintiffs was beyond the bounds of reasonable judgment.  And, thus, there being an explanation other than bad faith to account for Defendants' decisions to enforce the provisions, Plaintiffs have not alleged subjective bad faith as required to sustain under Delaware law a claim for a breach of the covenant of good faith and fair dealing.  Accordingly, I will dismiss Count IV of the Complaint.

IV.

For the reasons discussed above, I will grant Defendants' motion to dismiss (D.I. 44).

The Court will enter an order consistent with this Memorandum Opinion.